United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 26, 2005**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 04-30508

IN RE: GRAND JURY SUBPOENA

Appeal from the United States District Court
For the Middle District of Louisiana

Before JOLLY, SMITH, and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

Defendant-Appellant in this sealed case ("Appellant") appeals the district court's order that his former counsel ("Former Counsel") comply with a grand jury subpoena and the court's order denying Appellant's motion to quash that subpoena.[1]  For the following reasons, we VACATE the court's orders, GRANT Appellant's motion to quash the grand jury subpoena, and REMAND.

## BACKGROUND

On April 10, 2003, the police arrested Appellant after they conducted a search of the house where he resided with his girlfriend ("Witness") and her minor child.  The police acted on a complaint that drug trafficking was occurring at Witness's house.

---

[1]Because this appeal involves stayed proceedings before a grand jury and the briefs and record on appeal are under seal, we employ pseudonyms.

With Witness's permission to search her house, the police discovered, on an upper closet shelf, a loaded pistol, a loaded pistol clip, a bag of marijuana, money, and other drug paraphernalia. Witness told police she had no idea how the pistol got into her house. The police did not arrest Witness due to her surprise at the discovery. While the police were still at her house, Witness called Appellant and asked him to come home. When Appellant arrived, he told the police that the pistol and the marijuana were his; and the police placed him under arrest.

Shortly after Appellant's arrest, Witness provided a sworn, written statement to an ATF Agent in which she declared that she did not know how the pistol got into her house and that she was shocked to see the pistol and the marijuana. About a month later, Witness testified before a federal grand jury for the Middle District of Louisiana that her statement to the ATF Agent was true and correct. On May 28, 2003, the grand jury returned a four-count indictment against Appellant for possession of a firearm by a convicted felon, possession of a firearm with an obliterated serial number, possession with intent to distribute marijuana, and using or carrying a firearm during and in relation to a drug trafficking crime.

On June 10, 2003, the district court appointed Former Counsel to represent Appellant.[2] On March 12, 2004, shortly prior to his

---

[2]Former Counsel never represented Witness.

scheduled trial date, Appellant informed the district court by a filed letter that Former Counsel refused to present his defense in a manner which Appellant approved. Appellant denied that the firearm belonged to him, asserted that Former Counsel would not allow him to defend himself, and stated that Former Counsel refused to allow the owner of the firearm to come forward. That same day, Former Counsel moved to withdraw. On March 16, 2004, the district court granted Former Counsel's motion to withdraw. The court then appointed the Federal Public Defender to represent Appellant.

Shortly thereafter, the district court received an affidavit dated March 15, 2004, in which Witness swore she lied when she told the police that the pistol did not belong to her. In the affidavit, Witness explained that she lied because she feared she would lose custody of her minor child. Witness's affidavit initiated an investigation to determine whether Appellant and Witness engaged in a conspiracy to violate the law or violated the law by obstructing justice, committing perjury, or suborning perjury. In mid-April 2004, Witness was informed of the investigation.

On April 26, 2004, the government issued to Former Counsel a grand jury subpoena for May 19, 2004, seeking his testimony and "[a]ll written statements of [Appellant and Witness] and all notes, records, and recordings of interviews of [Appellant and Witness]." Former Counsel refused to appear before the grand jury unless he was ordered to do so by the court; he alleged that the information

3

sought was protected by the attorney-client and work product privileges.[3]

On April 27, 2004, Witness, after being advised of her rights and waiving them, informed the Assistant United States Attorney ("AUSA") that the contents of her March 15, 2004, affidavit were false. Witness stated that initially, when she met with Former Counsel, she told him that the firearm and the contraband found at her house did not belong to her and that she was unaware of their presence. Witness admitted after she had several conversations with Appellant, it was agreed she would execute an affidavit in which she would change her story and state that the firearm belonged to her. Witness explained Appellant and she had discussed the potential sentence that each would face. Witness admitted that she had discussed with Former Counsel the ramifications of changing her story to claim ownership of the firearm. Witness admitted that she asked Former Counsel about the penalty for committing perjury and of the potential sentence Appellant could receive if he were convicted of the firearm charge. Witness admitted that, after she learned of the grand jury investigation which had been initiated by

---

[3]Although no attorney-client privilege exists between Witness and Former Counsel, and Appellant thus cannot assert the attorney-client privilege to protect Witness's communications with Former Counsel, the work product privilege covers documents resulting from communications between the attorney and a third party that relate to trial or litigation strategy. *See* FED R. CIV. P. 26(b)(3); *In re Grand Jury Proceedings*, 43 F.3d 966, 972 (5th Cir. 1994) ("[T]he work product privilege belongs to both the client and the attorney, either one of whom may assert it.").

4

her March 15, 2004, affidavit, she refused to lie about the firearm.

On April 28, 2004, the government filed an *ex parte* motion, requesting that the district court compel Former Counsel to comply with the grand jury subpoena. The government explained that the grand jury was investigating whether Appellant and Witness violated the law and whether they sought the assistance and advice from Former Counsel to do so. The government alleged that the crime-fraud exception to the attorney-client and work product privileges justified an order for Former Counsel to comply with the grand jury subpoena.

The government supported its motion to compel with an affidavit prepared by an AUSA. The AUSA swore that the facts provided a strong basis for the district court to find Witness had committed perjury and Appellant had aided and abetted the crime. The AUSA also swore that the facts indicated Former Counsel had refused to participate in Appellant's attempt to solicit perjured testimony and to perpetuate a fraud upon the court. The government also submitted as exhibits: Witness's initial affidavit before the ATF Agent, a transcript of Witness's testimony before the grand jury, Appellant's letter requesting new counsel, Witness's second affidavit, Witness's waiver before the AUSA, and the subpoena issued to Witness to appear before the grand jury a second time. Based on the AUSA's affidavit, the district court, in language

5

tracking the grand jury subpoena, ordered Former Counsel to appear with all written statements and recordings from Appellant and Witness for an *in camera* examination in chambers.

Prior to Former Counsel's *in camera* examination, the AUSA filed a supplemental affidavit. There, the AUSA swore Witness admitted to the grand jury that her original statements to the ATF Agent and the grand jury denying ownership of the firearm were true and correct; that her March 15, 2004, affidavit was false; and that Witness and Appellant agreed Witness would lie by stating the pistol belonged to her, in an effort to help Appellant.

The district court examined the AUSA's affidavits and exhibits and conducted an *in camera* examination with Former Counsel. The court found the government met its *prima facie* case by showing that, during Former Counsel's representation of Appellant, Appellant and Witness were committing or intending to commit a crime or fraud and that Appellant's and Witness's communications with Former Counsel were in furtherance of that crime or fraud. The district court concluded the crime-fraud exception applied and ordered, in language tracking the grand jury subpoena, Former Counsel to comply with the subpoena. The court additionally ordered that Former Counsel should not assert the attorney-client or work product privilege as grounds for refusing to comply with the subpoena.

Appellant moved to quash Former Counsel's grand jury subpoena.

6

Appellant argued that Former Counsel's testimony, the documents, and the other items sought by the government were protected from disclosure by the attorney-client, work product, and Fifth Amendment privileges and were not subject to disclosure under the crime-fraud exception. Appellant asserted that his letter regarding Former Counsel's ineffective representation and Witness's inconsistent statements were not sufficient to establish the crime-fraud exception applied. Appellant also argued that Former Counsel's grand jury subpoena was overly broad; Appellant disagreed that all his communications with Former Counsel were subject to disclosure and were no longer protected by the attorney-client and work product privileges. Appellant contended that Witness's and his communications with Former Counsel, and Former Counsel's notes of these communications, made in connection with Appellant's defense to the charges in the indictment were legitimate and thus protected. That is, Appellant argued the government needed to identify each communication and document subject to disclosure and establish how the crime-fraud exception applied to the particular item.

The government opposed Appellant's motion to quash, arguing that Appellant's Fifth Amendment privilege against self-incrimination was not applicable. With respect to Appellant's attorney-client and work product privilege arguments, the government responded that it had shown, through the documents previously submitted to the district court, that the crime-fraud

exception applied.  The government did not respond to Appellant's overbreadth argument.

The district court denied Appellant's motion to quash, finding that the government had made a *prima facie* showing that: (1) during Former Counsel's representation of Appellant, Appellant and Witness were committing or intending to commit a crime or fraud and that Appellant's and Witness's communications with Former Counsel were in furtherance of that crime or fraud; and (2) Appellant's Fifth Amendment privilege against self-incrimination would not be implicated by Former Counsel's compliance with the grand jury subpoena.[4]  The court concluded that the government established the applicability of the crime-fraud exception to the attorney-client and the work product privileges and, in language tracking the grand jury subpoena, ordered Former Counsel to comply with the subpoena. The court again ordered that Former Counsel should not assert the attorney-client or work product privilege as grounds for refusing to comply with the subpoena.

Appellant timely appealed the district court's orders compelling Former Counsel to comply with the grand jury subpoena and denying Appellant's motion to quash.  Appellant moved the district court to stay the execution of its orders pending appeal; the court granted the stay.

**DISCUSSION**

---

[4]Appellant has not appealed this Fifth Amendment issue.

8

**Whether the district court's finding that the government made the *prima facie* showing necessary to establish the crime-fraud exception to the attorney-client and work product privileges was clearly erroneous.**

"Under the crime-fraud exception to the attorney-client privilege, the privilege can be overcome where communication or work product is intended to further continuing or future criminal or fraudulent activity." *United States v. Edwards*, 303 F.3d 606, 618 (5th Cir. 2002) (internal quotation marks and citations omitted). The government bears "the burden of establishing a prima facie case that the attorney-client relationship was intended to further criminal or fraudulent activity." *Id.* (internal quotation marks and citations omitted). "Because the application of the attorney-client privilege is a fact question to be determined in light of the purpose of the privilege and guided by judicial precedents, we review the district court's finding [that the crime-fraud exception applies] for clear error only." *Id.* (citation omitted). The work product privilege is subject to the same crime-fraud exception. *In re Burlington N., Inc.*, 822 F.2d 518, 524-25 (5th Cir. 1987) (citing, amongst others, *In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1242 (5th Cir. 1982)).

The government submitted the following items in support of its *ex parte* motion to compel Former Counsel's compliance with the grand jury subpoena: the AUSA's affidavit, Witness's initial affidavit before the ATF Agent, a transcript of Witness's testimony

before the grand jury, Appellant's letter requesting new counsel, Witness's second affidavit, Witness's waiver before the AUSA, and the subpoena issued to Witness to appear before the grand jury a second time. Based on its review of the AUSA'a affidavit, the district court found that an *in camera* examination of Former Counsel was appropriate in order for the court to determine whether the crime-fraud exception applied. The district court, in language tracking the grand jury subpoena, ordered Former Counsel to appear with all written statements and recordings from Appellant and Witness for an *in camera* examination in chambers. Before the district court's *in camera* examination, the government also submitted a supplemental affidavit by the AUSA describing Witness's second appearance before the grand jury, where she recanted the false affidavit that Appellant and she had agreed she would execute.

In *United States v. Zolin*, 491 U.S. 554 (1989), the Supreme Court considered and countenanced the procedure by which district courts should determine in their discretion whether to hold an *in camera* examination in the context of the crime-fraud exception. *Id.* at 564-65, 568, 572. Before a district court engages in an *in camera* examination to determine the applicability of the crime-fraud exception, the court "should require a showing of a factual basis adequate to support a good faith belief by a reasonable person." *Id.* at 572 (internal quotation marks and citation

10

omitted).

Appellant does not argue that the government's initial showing was insufficient to warrant an *in camera* examination; he does not allege that the district court abused its discretion by conducting an *in camera* examination of Former Counsel and the statements and records he brought to the examination.[5] Thus, that issue is waived.[6]

What Appellant argues is that the government ultimately did not meet its *prima facie* showing that any of Witness's or his communications with Former Counsel were made for the specific purpose of furthering a crime or fraud. Appellant asserts that his letter, regarding Former Counsel's ineffective assistance, and Witness's inconsistent statements in her affidavits and grand jury testimony are not sufficient to show their communications with Former Counsel were intended to further an ongoing or future crime of perjury or obstruction of justice. In response, the government argues the district court's finding was not clearly erroneous. The government contends the district court's finding that it made the requisite *prima facie* showing was proper based on the AUSA's

---

[5]What precisely Former Counsel brought with him to the *in camera* examination is not reflected in the record, only that he did not bring his "entire file" on Appellant.

[6]*See **United States v. Navejar***, 963 F.2d 732, 735 (5th Cir. 1992) ("Only issues that are specified and briefed are properly before the appellate court."); *see also **Yohey v. Collins***, 985 F.2d 222, 225 (5th Cir. 1993) (noting same).

11

affidavits and exhibits and the district court's *in camera* examination of Former Counsel.

"In order to invoke [the crime-fraud] exception, the party seeking to breach the walls of privilege must make out a prima facie case." **Int'l Sys.**, 693 F.2d at 1242. To make the necessary *prima facie* showing for the application of the crime-fraud exception here, the government must produce evidence "such as will suffice until contradicted and overcome by other evidence . . . a case which has proceeded upon sufficient proof to that stage where it will support [a] finding if evidence to the contrary is disregarded." *Id.* (applying *prima facie* definition to work product privilege and quoting **In re Grand Jury Proceedings in the Matter of Fine**, 641 F.2d 199, 203 (5th Cir. 1981) (applying *prima facie* definition to attorney-client privilege)). Allegations in pleadings are not evidence and are not sufficient to make a *prima facie* showing that the crime-fraud exception applies. **Int'l Sys.**, 693 F.2d at 1242.[7]

---

[7]**International Systems** involved a situation where the corporate defendant's management commissioned a special accounting review to investigate past and present questionable practices. 693 F.2d at 1237. The defendant opposed the plaintiffs' motion to compel production of its special review binders by asserting the attorney-client and work product privileges; the district court ordered production. *Id.* at 1238. There, we read the district court as only addressing work product immunity. *Id.* This Court explained:

> The courts have evolved a two element test for a prima facie showing:

12

Based on the government's submitted affidavits and exhibits and the *in camera* examination of Former Counsel, the district court

---

> First there must be a *prima facie* showing of a violation sufficiently serious to defeat the work product privilege. Second, the court must find some valid relationship between the work product under subpoena and the *prima facie* violation.

*Id.* at 1242 (citations omitted). The first part of the test is alternatively stated as requiring a showing that "the client was engaged in ongoing fraudulent activity when the work product was sought or produced." *Id.* at 1242-43. The second part of the test is alternatively stated as requiring "a showing that the [work product] material 'reasonably relate[s] to the fraudulent activity.'" *Burlington N.*, 822 F.2d at 525 n.5 (quoting *Int'l Sys.*, 693 F.2d at 1243). Although we acknowledged in *International Systems* "it could be argued that a prima facie case of ongoing fraud was . . . established," and "[t]he special review binders clearly have a reasonable relation to this ongoing fraud," we ultimately determined that "the court should require some proof of specific intent by management in the development of the work product documents." 693 F.2d at 1243. The plaintiffs' allegations of fraud, though detailed, were thus not enough to meet the first element of their *prima facie* showing that the crime-fraud exception applied in a case involving "the modern corporate world . . . [where] shady practices may occur without directors' and officers' knowledge." *Id.* at 1242-43.

In *International Systems*, collapsing the initial *prima facie* showing that "the client was engaged in ongoing fraudulent activity when the work product was sought or produced" with the additional showing that the "work product must reasonably relate to the fraudulent activity" made sense on a record where only limited and specific accounting binders were ordered to be produced. *See id.* at 1242-43. However, in a case where the grand jury subpoena at issue does not limit itself to any particular conversations or documents, it is not feasible to undertake the second part of the *prima facie* inquiry outlined in *International Systems* and later cited in *Burlington Northern*. Thus, in a case as presented here, where there is no discernible limit to the subpoena or discovery request at issue, a *prima facie* showing is made if the party seeking the otherwise privileged materials produces sufficient evidence that during the attorney-client relationship, the client intended to further a future or ongoing crime or fraud. *See Edwards*, 303 F.3d at 618.

13

found that the government had made a *prima facie* showing that during Former Counsel's representation of Appellant, Appellant and Witness were committing or attempting to commit a crime or fraud and that their communications with Former Counsel were in furtherance of that crime or fraud. Thus, the court found that the crime-fraud exception to the attorney-client and work product privileges was established and ordered Former Counsel to comply with the subpoena.

A finding is not clearly erroneous if it is "plausible in light of the record as a whole." **Edwards**, 303 F.3d at 645 (internal quotation marks and citation omitted). The government's submitted evidence showed that Appellant and Witness agreed Witness would make sworn statements in an affidavit contradictory to her prior sworn statements and grand jury testimony. The evidence also showed that Appellant and Witness obtained information from Former Counsel concerning the plausibility of their plan and the potential penalties each faced. Thus, the district court found the government made a *prima facie* showing that during the course of Former Counsel's representation of Appellant, Appellant and Witness used Former Counsel to obtain legal advice which would assist them in obstructing the criminal proceedings and perpetuating a fraud. In light of the record as a whole, this Court finds the district court's finding that the crime-fraud exception applied during the course of Former Counsel's representation of Appellant was not

14

clearly erroneous.

**Whether the district court overbroadly interpreted the scope of the crime-fraud exception.**

To put this issue in context, the district court's orders compelling Former Counsel to comply with the grand jury subpoena and denying Appellant's motion to quash that subpoena employed the following language, which substantially mirrored that of the subpoena at issue:

> IT IS ORDERED that [Former Counsel] shall comply with the grand jury subpoena which commands him to appear and testify before the Grand Jury for the Middle District of Louisiana on May 19, 2004, and bring with him all written statements of [Appellant] and [Witness] and all notes, records[,][8] and recordings of interviews of [Appellant] and [Witness], and that he shall not assert the attorney-client or the work product privileges as a basis for not complying with said subpoena.

(Footnote added).

Appellant argues, even if the crime-fraud exception applies, the attorney-client and work product privileges were not abrogated with respect to all of Witness's and his statements to and communications with Former Counsel during the slightly longer than nine months that Former Counsel represented Appellant. According to Appellant, not all statements and communications are properly subject to the grand jury subpoena issued to Former Counsel because many statements and communications not subject to the crime-fraud exception remain protected by the privileges. Appellant cites

[8]The district court's order denying Appellant's motion to quash omits this comma.

15

*Burlington Northern* for the proposition that the district court cannot, in Appellant's words, "paint with too broad a brush stroke" to reach all statements and communications between Appellant and Former Counsel and between Witness and Former Counsel, but instead must narrow its focus in applying the crime-fraud exception "to the specific purpose of the particular communication or document." 822 F.2d at 525. Appellant contends that the government did not establish a *prima facie* case "vis-a-vis each specific communication that [Appellant's] purpose in seeking the legal advice and making the communication was to further continuing or future criminal or fraudulent activity." Appellant asserts the government cannot establish that every communication between Former Counsel and him and between Former Counsel and Witness was made to further an ongoing or future crime or fraud. Thus, Appellant argues that the district court's orders compelling Former Counsel to appear before the grand jury with all written statements, notes, records, and recordings pertaining to communications with Appellant and Witness are overly broad and should be vacated.

In response, the government argues that the district court's orders compelling Former Counsel's compliance with the grand jury subpoena are not overly broad because, once the *prima facie* showing is made that the crime-fraud exception applies, the attorney-client and work product privileges no longer exist. That is, the privileges disappear as to all communications relative to the

16

subject of the consultation. The government asserts that the crime-fraud exception permits disclosure of "any communications between the attorney and client if the client seeks advice from the attorney in carrying out a crime or fraud." *See* **Grand Jury Proceedings**, 43 F.3d at 972.

The attorney-client privilege is recognized as "the oldest of the privileges for confidential communications known to the common law." **Zolin**, 491 U.S. at 562 (quoting **Upjohn Co. v. United States**, 449 U.S. 383, 389 (1981)); *see also* **Edwards**, 303 F.3d at 618 (describing the attorney-client privilege as "most venerated"). The central concern of this longstanding privilege is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." **Zolin**, 491 U.S. at 562 (quoting **Upjohn**, 449 U.S. at 389). Clients must "be free to make full disclosure to their attorneys of past wrongdoings . . . in order that the client may obtain the aid of persons having knowledge of the law and skilled in its practice." **Zolin**, 491 U.S. at 562 (internal quotation marks and citations omitted). However, the reasons for protecting the "confidences of wrongdoers" "ceas[e] to operate at a certain point, namely, where the desired advice refers *not to prior wrongdoing*, but to *future wrongdoing*." **Id.** at 562-63 (internal quotation marks and citations omitted). **Zolin** makes clear: "It is the purpose of the crime-fraud exception to

17

the attorney-client privilege to assure that the 'seal of secrecy,' . . . between lawyer and client *does not extend* to communications 'made for the purpose of getting advice for the commission of a fraud' or crime." **Id.** at 563 (citations omitted and emphasis added).

The strong policy concerns behind the work product privilege have been similarly recognized:

> The privilege exists to encourage full disclosure of pertinent information by clients to their attorneys. Its protection extends to past criminal violations. The rationale for this is that the client, given the nature of our adversary system, has a legitimate interest in securing informed representation without fear of forced disclosure.

**Int'l Sys.**, 693 F.2d at 1242 (internal citation omitted). The privilege serves to protect the interests of clients and their attorneys in preventing disclosures about the case, **id.**, "by shielding the lawyer's mental processes from his adversary," **In re Grand Jury Subpoena**, 220 F.3d 406, 408 (5th Cir. 2000). But a client "has no legitimate interest in seeking legal advice in planning future criminal activities." **Int'l Sys.**, 693 F.2d at 1242. Therefore, the crime-fraud exception "comes into play if the client consults an attorney for advice that will assist the client in carrying out a contemplated illegal or fraudulent scheme." **Id.** (internal quotation marks and citation omitted). "It is only the 'rightful interests' of the client that the work product doctrine was designed to protect." **Id.** (citation omitted).

18

This is the backdrop of "perpetual tension," *see* **United States v. Dyer**, 722 F.2d 174, 177 (5th Cir. 1983), against which we must answer the instant question – whether the district court has overbroadly interpreted the scope of the crime-fraud exception in applying it to the grand jury subpoena in this case. In **Grand Jury Proceedings**, this Court reversed and remanded where the challenged grand jury subpoenas broadly ordered attorneys to testify and produce all "notes, memoranda, or any document pertaining to any interviews of any person pertaining to this case," 43 F.3d at 968, and "[a]ny records, notes, memoranda, or any document referencing any conversation between any employee of [the attorneys' law firm] and any of [certain specified] individuals," **id.** (first alteration added). However, there the reach of the crime-fraud exception was not at issue. In that case the district court had not sufficiently addressed whether the crime-fraud exception applied at all, and we remanded "for consideration of whether the government has made a sufficient showing to overcome the work product privilege." **Id.** at 972-73.[9]

---

[9]We respectfully note that a panel of the First Circuit erred in interpreting our law when it stated our decision in **In re Grand Jury Subpoena**, 190 F.3d 375, 384 n.11 (5th Cir. 1999), "qualified or abandoned" **Grand Jury Proceedings**. **FDIC v. Ogden Corp.**, 202 F.3d 454, 460 n.4 (1st Cir. 2000). In **Grand Jury Subpoena**, we declined to take appellate jurisdiction to "accept the flawed [district court] procedure and take steps to work around it," as we had done in **Grand Jury Proceedings**, where "judicial efficiency and economy favored application" of that option. 190 F.3d at 388. In **Grand Jury Subpoena**, we distinguished the "unique dilemma" found in

19

Never before has this Court specifically addressed the propriety of the scope of the crime-fraud exception to the attorney-client and work product privileges on a record where the grand jury subpoena compels disclosure of all communications between the attorney and his client and between the attorney and a third party, written, oral, or otherwise, rather than discrete communications related to a particular issue or limited to particular media. That is, the Supreme Court and Fifth Circuit cases cited by the parties all involve the question of the applicability and/or scope of the crime-fraud exception to specified documents or conversations already limited to a certain time or context, rather than a challenge to a discovery request or a subpoena seeking disclosure *in toto*.

Certain of these cases address only the application of the crime-fraud exception to the attorney-client privilege. *See, e.g., Zolin*, 491 U.S. at 557, 559-60, 574-75 (considering whether two documentary tapes and partial transcripts of the tapes could be reviewed by district court *in camera*); *United States v. Ballard*, 779 F.2d 287, 292-93 (5th Cir. 1986) (allowing attorney's testimony

*Grand Jury Proceedings*, 43 F.3d at 970, and instead chose "the second option of rejecting the flawed procedure and taking steps to correct it by granting mandamus," 190 F.3d at 389. In Appellant's case, there is no such jurisdictional dilemma: a client "who claims [his] own interest or privilege may appeal an order compelling [his] innocent attorney to testify before a grand jury, even though the attorney has not refused compliance and been held in contempt." *Grand Jury Subpoena*, 190 F.3d at 382-83 (citing *Matter of Fine*, 641 F.2d at 203).

in criminal case where his testimony related to "fraudulent scheme to conceal [defendant's] property, either from the tax collector or from [defendant's] other creditors or both" or "continuation of that illicit plan"); *Dyer*, 722 F.2d at 176 (considering grand jury subpoenas requiring two attorneys' testimony "as to the circumstances surrounding the preparation and delivery of the November 16th letter from" defendant to an FBI informant and reversing district court's refusal to grant defendant's motion to quash as to one attorney because the government did not meet its *prima facie* showing); *Matter of Fine*, 641 F.2d at 200, 204 (vacating district court's order to compel attorney to reveal unnamed client's identity before grand jury because the government failed to meet its *prima facie* showing). One case involves only work product. *See Int'l Sys.*, 693 F.2d at 1238, 1242-43 (vacating discovery order "that certain documents be produced" from "binders containing the information . . . developed in [the accounting firm's] special review" because plaintiffs did not make *prima facie* showing). One case addresses the crime-fraud exception in the context of both privileges. *See Burlington N.*, 822 F.2d at 525 (finding district court erred in ordering discovery of documents relating to two groups of litigation because the court did not consider whether the specific litigation activities were illegitimate).

The government relies on case language to argue that once it

is established a client abused the attorney-client privilege relationship by seeking advice to commit a crime, the privilege entirely disappears and all the confidences within the relationship are no longer shielded. For example, the government cites language in **Ballard**:

> A half century ago, Justice Cardozo wrote: "*The [attorney-client] privilege takes flight if the relation is abused*. A client who consults an attorney for advice that will serve him in the commission of a fraud will have no help from the law." . . . Once the party seeking disclosure makes a prima facie case that the attorney-client relationship was used to promote an intended criminal activity, *the confidences within the relationship are no longer shielded*. These precepts have since been applied consistently and have come to be known as the crime or fraud exception to the attorney-client privilege.

779 F.2d at 292-93 (citing **Clark v. United States**, 289 U.S. 1, 15 (1932)) (footnotes omitted and emphasis added). The government also cites **Matter of Fine**: "If there is a prima facie showing that the professional relationship was intended to further a criminal enterprise, *the privilege does not exist*." 641 F.2d at 203 (emphasis added). The government insists that once the privilege has disappeared, disclosure is permitted of any and all communications relative to the subject matter of the consultation. *See* **Grand Jury Proceedings**, 43 F.3d at 972 ("[T]he crime/fraud exception permits disclosure *of any communications* between the attorney and the client if the client seeks advice from the

22

attorney in carrying out a crime or fraud.") (emphasis added).[10]

The government discounts Appellant's reliance on **Burlington Northern** for his overbreadth argument, asserting it has no application to this case because there two separate groups of lawsuits were at issue, 822 F.2d at 521, while here only one criminal prosecution is at issue. In **Burlington Northern**, the plaintiffs filed an antitrust lawsuit claiming that defendant railroads conspired to prevent construction of a coal pipeline by filing and defending certain allegedly sham lawsuits. *Id.* Plaintiffs sought the discovery of documents relating to those two groups of lawsuits, and the defendant railroads resisted discovery on the grounds of the attorney-client and work product privileges. *Id.* at 521-22. The district court found that the plaintiffs established a *prima facie* case that the defendant railroads' "administrative and judicial challenges" in one group of lawsuits and "their defense" of the other group of lawsuits "were in furtherance of [a larger] conspiracy" and ordered the discovery of documents relating to both sets of litigation. *Id.* at 523. On

---

[10]We note that the government, when making this line of argument, entirely miscites **Zolin** for the proposition that "[although t]he *prima facie* standard is commonly used by courts in civil litigation to *shift* the burden of proof from one party to the other[, i]n the context of the fraud exception, . . . the standard is used to dispel the privilege altogether." 491 U.S. at 563 n.7. Such quotation is nothing the Supreme Court approved; instead, it comes from a parenthetical from a law review note cited for the statement that the phrase "*prima facie* case" in the context of the crime-fraud exception "has caused some confusion." *Id.*

23

mandamus review, this Court found:

> The district court erred in ordering discovery without considering whether the specific litigation activities were illegitimate. The attorney/client privilege and work product immunity protect communications and papers generated when a client engages his attorney for legitimate purposes. To the extent the railroads sought out their attorneys to bring lawful suits and consulted with them in connection with such suits, they were within the scope of this protection. That the railroads might also have consulted and received the help of their attorneys in connection with other activities that are not lawful does not change this conclusion. The focus must be narrowed to the specific purpose of the particular communication or document. To the extent the document deals with a protected activity, it is immune from discovery.

*Id.* at 525. The government argues this Court's findings in *Burlington Northern* are not relevant to Appellant's case because Former Counsel represented Appellant on only one occasion; and the government has made a *prima facie* showing that during the representation for that single prosecution, Appellant was committing or intending to commit a crime or fraud.

In reply, Appellant stresses that he did not secure Former Counsel's services solely for the purpose of committing a crime or fraud. Rather, the proper purpose of securing Former Counsel's services was to defend Appellant against a government indictment charging him with past wrongdoing, which defense lasted approximately nine months before Former Counsel withdrew from the case. Appellant contends the government cannot excerpt generalized case language and convincingly argue that once it is determined a client at some point communicated with his attorney for the purpose

24

of furthering a crime or fraud, regardless of the extent or the original purpose of the attorney-client relationship, the crime-fraud exception permits disclosure of any otherwise privileged communications.

Appellant cites *Dyer*, 722 F.2d at 177, where the government subpoenaed the defendant's civil attorney and his criminal attorney to the grand jury to question them about conversations they had with the defendant in connection with a letter written by the civil attorney as part of the defendant's alleged attempt to obstruct justice.   Appellant notes that this Court determined the defendant's "communication with [his civil attorney] concerning the November 16 letter is not privileged, but the communication with [his criminal attorney] is." *Id.*  This Court held that "when the government can by competent evidence establish a prima facie case that an attorney was being used in the commission of a crime there is no privilege." *Id.* at 178.   But this Court limited such seemingly broad holding by making clear that the defendant in *Dyer* "retains his privilege to block the testimony of [his civil attorney] before the grand jury except as to the events immediately surrounding the preparation of" the letter at issue. *Id.* at 179. Thus, even though the government established a *prima facie* showing of the crime-fraud exception with respect to the civil attorney's representation of the defendant, the defendant's relationship with his civil attorney outside of the events connected with that one

25

letter remained protected by the attorney-client privilege.

Appellant emphasizes that this Circuit thus restricts the scope or reach of the crime-fraud exception, as evidenced in *Dyer*, to only those communications made for the purpose of furthering an ongoing or future crime or fraud. The reach of the crime-fraud exception, therefore, does not extend to all communications made in the course of the attorney-client relationship. Appellant argues this approach is not only consistent with *Zolin*, where the Supreme Court delineated the crime-fraud exception with respect to "communications made for the purpose of getting advice for the commission of a fraud or crime," 491 U.S. at 563 (internal quotation marks and citation omitted), but also with the approach taken by the Tenth and Second Circuits.

For example, the Tenth Circuit stated, with respect to documentary evidence, that after finding the applicability of the crime-fraud exception to the attorney-client privilege, a district court still may be required to conduct an *in camera* examination of all documents subpoenaed by a grand jury "if there is a possibility that some of them may fall outside the scope of the exception to the privilege." *In re Grand Jury Proceedings (Vargas)*, 723 F.2d 1461, 1467 (10th Cir. 1983) (applying this analysis to both the attorney-client and work product privileges). Likewise, in the context of grand jury testimony, the Tenth Circuit stated that "district courts should define the scope of the crime-fraud

exception narrowly enough so that information outside of the exception will not be elicited before the grand jury." *In re Grand Jury Subpoenas*, 144 F.3d 653, 661 (10th Cir. 1998) (addressing the attorney-client privilege). Under the Tenth Circuit's approach, it may be appropriate for the district court to examine *in camera* the questions to be asked of the witness before the grand jury "to ensure the scope of the [grand jury] inquiry will not be too broad." *Id.* (citing *In re Richard Roe, Inc.*, 68 F.3d 38, 41 (2d Cir. 1995)).

Appellant also notes that the Second Circuit in *Richard Roe* ordered the district court on remand to examine each document and communication to determine whether the client communication or attorney work product in question was itself made with the intent to further a crime or fraud. 68 F.3d at 40-41 (finding the district court incorrectly applied a "relevant evidence" test as opposed to the correct "in furtherance" test when it determined the crime-fraud exception applied to both privileges). In conclusion, Appellant maintains that the district court's orders here are overly broad because they allow the government access to all communications made to Former Counsel by Appellant and all work product of Former Counsel, whether or not those communications and documents were intended to further the alleged crime or fraud at issue.

We agree with Appellant that the district court's orders

compelling Former Counsel to comply with the grand jury subpoena in this case are overly broad.[11]  We conclude that the proper reach of the crime-fraud exception when applicable does not extend to all communications made in the course of the attorney-client relationship, but rather is limited to those communications and documents in furtherance of the contemplated or ongoing criminal or fraudulent conduct.[12]  Based upon our examination of the sealed record, including the *in camera* examination of Former Counsel, this case does not present a situation where Appellant's entire criminal representation by Former Counsel was based upon or sought for the sole purpose of perpetuating a crime or fraud.[13]  The district

---

[11]We do not, however, make any assessment whether the district court needs to examine *in camera* each document, communication, or potential grand jury question to Former Counsel to determine if it falls within or outside the asserted privileges.  Such question is not properly before us; we merely assess whether the district court erred in compelling Former Counsel to comply with a subpoena that indiscriminately reached everything, without regard for those communications and statements where the attorney-client and work product privileges remained intact.  As previously noted, this case is procedurally distinct from those cases where the district court ordered compliance with a subpoena or discovery request already limited to certain items or otherwise bounded by time or events within the representation, which precise limitation or boundary could then be reviewed on appeal for proper applicability and/or scope of the crime-fraud exception.

[12]Our holding regarding the limited scope of the crime-fraud exception does not preclude the potential disclosure of a client's entire file, in the proper case, upon the proper showing of the client's entire representation's being in furtherance of the alleged crime or fraud.

[13]Despite the district court's error in issuing the overly broad orders here, the court, during its *in camera* examination of Former Counsel, acknowledged that this was not a case where the entire file of the client was subject to disclosure.  After Former

28

court's orders compelling Former Counsel's compliance with the grand jury subpoena here did not in any way limit the required disclosures. The orders compel Former Counsel to bring all written statements of Appellant and Witness and all notes, records, and recordings of interviews of Appellant and Witness. Moreover, because the court's orders compel Former Counsel to appear and order that he cannot assert any attorney-client or work product privilege, no boundary exists as to the extent of his compelled testimony. The court's application of the crime-fraud exception was overly broad because it lacked the requisite specificity to reach only communications and documents no longer protected by the attorney-client and work product privileges. Therefore, we find the district court's orders compelling Former Counsel to comply with the grand jury subpoena and denying Appellant's motion to quash the subpoena issued in error.

We so conclude for the following reasons. First, we note that unlike the government suggests, no case stands for the proposition that, when a *prima facie* showing is made that a client has consulted with his attorney for the purpose of furthering a crime

---

Counsel informed the court that, the subpoena's broad wording aside, he had not brought Appellant's entire file with him, the court assured Former Counsel he would be in compliance with the orders with "[j]ust the documents that would conform to that." We infer the conforming items to be those properly shown to fall within the scope of the crime-fraud exception's application to the attorney-client and work product privileges. However, implicit understanding by a district court of the limited scope of the crime-fraud exception's application to the privileges cannot save a court's overly broad orders.

or fraud, the privilege entirely disappears, subjecting everything in connection with that client's representation with that attorney to disclosure. While there is certain broad language employed in the cases cited by the government, again, none of those cases dealt with the instant question of the propriety of an order requiring compliance with a subpoena lacking any discernible limit on disclosure. In addition, in both **Grand Jury Proceedings**, 43 F.3d at 972-73, and **Matter of Fine**, 641 F.2d at 204, despite any such broad language regarding loss of protection of the privileges, the disposition of the disclosure orders at issue was vacation and remand because the government had not sufficiently shown the crime-fraud exception to even apply.

Further, the caselaw cited for breadth of the crime-fraud exception's scope simultaneously stands for a sense of limitation or condition. For example, the Supreme Court in **Zolin** chose to describe the "seal of secrecy," that is, the attorney-client privilege, as not "*extend[ing]* to communications made for the purpose of getting advice for the commission of a fraud or crime." 491 U.S. at 563 (internal quotation marks and citations omitted and emphasis added). Lack of extension to certain types of communications reasonably implies an abbreviation or an abridgement of the privilege, but not an obliteration altogether as to all communications remaining under the "seal." In **Grand Jury Proceedings**, this Court described the permitted disclosure of

30

communications between attorney and client by using the conditional phrase: "if the client seeks advice from the attorney in carrying out a crime or fraud." 43 F.3d at 972.

In assessing the proper scope of the crime-fraud exception's application to the attorney-client and work product privileges, we find instructive the treatment of such by our sister circuits, which bolsters our conclusion here that the reach of the crime-fraud exception does not extend to all communications made in the course of the attorney-client relationship, but rather must be limited to those communications made and documents produced in furtherance of the ongoing or future crime or fraud, no longer protected by the privileges. As noted by Appellant, the Tenth Circuit in *Vargas*, 723 F.2d at 1461, and later in *Grand Jury Subpoenas*, 144 F.3d at 661, indicated that the reach of subpoenas should be narrowly defined, so as not to extend to documents or testimony falling outside the scope of the crime-fraud exception to the privilege, which documents and conversations remain protected.

The Second Circuit also explained that the scope of the crime-fraud exception only extends to "which, if any, of the documents or communications were in furtherance of a crime or fraud." *Richard Roe*, 68 F.3d at 41; *see also* *In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*, 731 F.2d 1032, 1038 (2d Cir. 1984) (considering "the question of whether any of th[e requested] documents are within the scope of the exclusion for materials

31

prepared in furtherance of a continuing or future crime or fraud" and reversing in part denial of motion to quash as to the documents that retain attorney-client and work product protection).  In *Grand Jury Subpoena Duces Tecum*, the Second Circuit separated, within the attorney's single unit of representation, "advice sought [by the client] in furtherance of a future or ongoing fraud" as unprivileged and "communications with respect to advice as to past or completed frauds" as within the privileges.  731 F.2d at 1041. There, the court employed a temporal limitation to determine which documents retained protection:  those that followed the date of the government's discovery of the fraudulent sale at issue.  *Id.* at 1041-42.  As to grand jury testimony, the Second Circuit explained that limits are required as to the "scope of the examination permitted."  *Richard Roe*, 68 F.3d at 41.

The Eighth Circuit in *In re BankAmerica Corp. Securities Litigation*, 270 F.3d 639 (8th Cir. 2001), on mandamus review vacated the district court's disclosure order where the court "assumed, without any further showing by plaintiffs, that all contemporaneous attorney-client communications 'could be construed' as in furtherance of the alleged fraud.  This was error."  *Id.* at 643.  On remand, the Eighth Circuit directed the district court to determine whether documents authored after the bank merger or press release at issue "necessarily fall outside the crime-fraud exception because they could only relate to prior wrongdoing" and

32

thus remain protected and not subject to discovery. *Id.* The Eighth Circuit also considered the breadth of a discovery order. *Pfizer, Inc. v. Lord*, 456 F.2d 545 (8th Cir. 1972). There, the court addressed whether the masters' discovery report's conclusions constituted "an overbroad, 'sweeping denial of defendants' attorney-client privilege,' or whether [they] are reasonably bottomed on a review calculated to shield from discovery all communications by means of which petitioners legitimately sought or received legal advice." *Id.* at 551. Though it declined to issue the writ of mandamus, the Eighth Circuit directed the district court "to continue to guard the attorney-client privilege . . . by reviewing, if necessary, all contested documents prior to ruling on the discoverability of such documents and by ordering the production to respondents only of those documents individually found to have been prepared in perpetration or furtherance of fraudulent activity." *Id.*

Finally, we note the D.C. Circuit's explanation: "Once a sufficient showing of crime or fraud has been made, the privilege vanishes as to all material *related to the ongoing violation*." *In re Sealed Case*, 676 F.2d 793, 812 n.74 (D.C. Cir. 1982) (emphasis added). The D.C. Circuit considered whether six items covered by a grand jury subpoena fell within the reach of the crime-fraud exception and found that only one item did. *Id.* at 816. In *International Systems*, 693 F.2d at 1242, we acknowledged the DC

Circuit's requirement in *Sealed Case*, in the context of the crime-fraud exception's application to the work product privilege, that "the court must find some valid relationship between the work product under subpoena and the *prima facie* violation."[14]

Despite the government's attempt to distinguish *Burlington Northern*, this Court's general characterization of the scope of the crime-fraud exception replicates that found in the treatment of other circuits – narrowing the focus of the exception to only those communications falling outside the attorney-client and work product privileges that do not "deal[] with a protected activity" such that they are "immune from discovery." *See* 822 F.2d at 525.

For the guidance of district courts, we now use the language we first employed in *International Systems* and restated in *Burlington Northern* to lead us in outlining the proper scope of the crime-fraud exception's application to both the work product and the attorney-client privileges. In *International Systems*, we

---

[14]In *International Systems*, we distinguished *Sealed Case* in vacating the district court's order requiring production of the special review binders at issue because the plaintiffs had only put forth allegations, not proof, of specific intent by the corporate defendant's management in the development of the binders. In *Sealed Case*, in contrast, the D.C. Circuit found the record "more than satisfies the prima facie violation requirement." 676 F.2d at 815. Evidence, as opposed to allegations, that the "Company's chairman lied to or attempted to mislead the IRS with his affidavit [was] enough to pass the first stage of the [*prima facie*] inquiry." *Id.; see supra* n.7 (discussing how the first stage of the *prima facie* inquiry does not address the necessary issue of scope in cases where the discovery request or subpoena lacks any discernible limitation).

34

indicated that meeting the *prima facie* test to pierce the work product privilege through the crime-fraud exception would ordinarily require, in addition to an initial showing that the client intended to further an ongoing or future crime or fraud during the attorney-client representation, a secondary showing of "some valid relationship between the work product under subpoena and the *prima facie* violation"; that is, "the work product must reasonably relate to the fraudulent activity." 693 F.2d at 1242-43; *see also* **Burlington N.**, 822 F.2d at 525 n.5 (citing **Sealed Case**, 676 F.2d at 815 n.91).

Therefore, we here additionally label what we had previously termed the second element of the *prima facie* test as the proper scope of the crime-fraud exception's application to the work product privilege and hold that the same scope also applies to the attorney-client privilege. After the party seeking disclosure meets its *prima facie* showing that the client intended to further an ongoing crime or fraud during the attorney-client relationship such that the crime-fraud exception applies, the only attorney-client communications and work product materials falling within the scope of the crime-fraud exception are those shown to hold "some valid relationship" to the *prima facie* violation such that they "reasonably relate to the fraudulent activity." *See* **id.** at 1243; *see also* **Burlington N.**, 822 F.2d at 525 n.5. "[T]he exact formulation of a test for relatedness is less important than an

35

understanding of what the [scope] test must accomplish; easy differentiation between material for which the law should not furnish the protections of a privilege and material for which a privilege should be respected." ***Burlington N.***, 822 F.2d at 525 n.5 (internal quotation marks and citation omitted).

We also find the language in ***Dyer*** to be instructive in defining the proper reach of the crime-fraud exception:

> Our immediate concern is accommodating the government's interest in obtaining the testimony of [Appellant's] attorney[] with [Appellant's] interest in protecting his relationship with his lawyer[]. Concerns beyond the immediate interest of [Appellant] rest on both sides of this balancing scale. On the [Appellant's] side there is a concern that the Sixth Amendment-rooted adversary system be protected in actuality, and when distinct, in appearance. . . . On the other side there is the right to every person's evidence. But having said this we are persuaded that these interests are accommodated by the procedure followed below. We are not so removed from reality as to indulge in the fantasy that all accused are truthful with their lawyers. But an inconsistency between the government's proof and an accused's version alone will not defeat or even threaten the attorney-client privilege. The line between manufacture of evidence . . . and imaginative advocacy may at times be obscure. We must be particularly cautious as that line is approached to insure that vigorous advocacy is not unfairly checked or that able counsel are not forced from cases without cause.

722 F.2d at 178. The above description supports drawing a line beyond which the crime-fraud exception to the attorney-client and work product privileges does not pass, except upon the proper showing of reasonable relation to the furtherance of the ongoing or future crime or fraud. Such balancing accommodates the government's interest in uncovering ongoing or future criminal or

fraudulent behavior without abandoning the clients' interest in protecting privileged information within legitimate representation.

In *Dyer*, we specifically noted that, as to the civil attorney, where the government met its *prima facie* showing the crime-fraud exception applied to remove the attorney-client privilege, the defendant still "retains his privilege to block the testimony of [his civil attorney] before the grand jury except as to the events immediately surrounding the preparation of the" letter at issue. 722 F.2d at 179. This carving out of the crime-fraud exception to reach only the events in connection with preparation of the letter, which was the basis of the accused's alleged crime or fraud, indicates that the proper scope of the crime-fraud exception must necessarily be limited to those attorney-client communications and work products reasonably related to the furtherance of the ongoing or future crime or fraud at issue. Otherwise, to put it simply, the crime-fraud exception swallows the privilege rule.

## CONCLUSION

Having carefully considered the record of the case and the parties' respective briefing and arguments, for the reasons set forth above, we VACATE the district court's orders, GRANT Appellant's motion to quash the grand jury subpoena, and REMAND. In the event the government chooses to reissue a grand jury subpoena to Former Counsel, the district court's analysis of that subpoena's reach should proceed consistent with this opinion.

37

**VACATED,** motion **GRANTED,** and **REMANDED.**