**In re: GRAND JURY SUBPOENAS.**

No. 08–10345.

United States Court of Appeals,
Fifth Circuit.

Feb. 25, 2009.

Michael Lee Smith (argued), John W. Bickel, II, William A. Brewer, III, Michael Joseph Collins, Bickel & Brewer, Dallas, TX, for Sealed Appellant 1, Sealed Appellant 2, Sealed Appellant 3.

Alan L. Hechtkopf, John Hinton, III (argued), U.S. Dept. of Justice, Tax Div., Washington, DC, for Sealed Appellee 1.

Before HIGGINBOTHAM, ELROD and HAYNES, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

This appeal arises from subpoenas to a law firm and lawyer issued by a federal grand jury investigating alleged wrongdoing by the appellants.[1] The appellants were permitted to intervene before the district court; unsatisfied with the result there, they—and not the Law Firm or Lawyer that were subpoenaed—have appealed to this court.

## I

Over several decades, the appellants served as officers and directors of large companies, receiving hundreds of millions of dollars worth of stock options and other compensation. This case takes up the appellants' story in 1992, when they retained a California attorney, since imprisoned, who helped them to establish various offshore trusts, corporations, and accounts, purportedly designed to help them escape taxes on their compensation. For more than a decade the appellants used a series of lawyers to conduct activities in furtherance of this effort. The government claims that the appellants effectively concealed hundreds of millions of dollars in income and committed numerous criminal acts, including violations of tax and securities law, via activities related to this scheme. We refer to this scheme as the "foreign trust scheme."

The foreign trust scheme, details of which are still being sorted by federal prosecutors and the grand jury, took shape as the appellants transferred assets to foreign "trusts," taking advantage of the tax consequences of the transfers, but—in a crucial misstep—without surrendering control or enjoyment of the assets.[2] Attorneys were involved at every step of the way; the extent of their complicity is not clear, but their involvement and its necessity are undoubted, quite clearly demanded by the sophisticated, large-scale scheme, which required high legal maintenance. A second California attorney assisted the appellants from 1992–1997 by

---

1. Because this appeal involves an active grand jury proceeding, we have avoided identifying information as far as possible.

2. According to the government, the plan ran thus: The trustees of what were effectively sham trusts were controlled by "trust protectors," who were close business associates of the appellants and who essentially transmitted detailed instructions from the appellants to the "trustees." The appellants personally benefitted from the purchases of millions of dollars of art, jewelry, and real estate with trust monies. They also ordered timely and allegedly illegal sales of securities during blackout periods in which they would not themselves have been able to sell. The trusts were supposedly designed to provide annuities in distant years: but in reality they apparently served as personal piggy banks, very much in the present.

providing tax advice and preparing other related legal documents. There was also an in-house lawyer who served as a "trust protector" and who seems to have been deeply involved in the appellants' activities.

For the Law Firm that is the target of a subpoena at issue in this appeal, there are to date no allegations of wrongdoing. Rather, the government alleges that the Firm was misled and provided advice resting on "false premises" concerning the actual control and uses of the trusts. The Law Firm entered the scene in 1993, with the Lawyer in this case providing advice on the tax implications of the first two trusts; in 1994, the Lawyer provided advice concerning later trusts, and concerning a firm wholly owned by trusts the appellants controlled directly or through their agents and associates. From 1996 to 2003, Law Firm provided advice concerning previously-established trusts and transactions, and conducted a 1997 review in connection with IRS audits of 1992 and 1996 transactions involving foreign trusts. A Texas firm represented the appellants from 1997 until 2005 and also provided legal advice on tax and trust issues.

A civil tax audit brought the appellants' activities to the attention of the government. The investigation thus far has uncovered twenty-five Isle of Man trusts and forty-eight subsidiary corporations (formed in the Isle of Man and the Cayman Islands) associated with appellants.[3] The grand jury continues to investigate the appellants for various forms of tax and securities fraud committed 1992–2004.

The grand jury has now subpoenaed three different law firms to compel testimony and document production, and each set of subpoenas has triggered assertions of attorney-client privilege. The first

claims involved the in-house counsel and the Texas firm, the second involved attorneys and the firm associated with the second above-mentioned California lawyer, and the third was for the instant appeal. Each time, the district court held that the privilege had been lost under the crime-fraud exception, at least as to some of the subpoenaed documents. The first order was appealed to this court by the instant appellants and affirmed by this court on July 18, 2007, in a sealed order.

Turning to the third order, which is at issue in this appeal: On April 26, 2007, the grand jury subpoenaed records from Law Firm, and the Law Firm resisted on grounds of privilege. The government responded on October 15, 2007, arguing that the crime-fraud exception applied to the requested documents. On December 3, Law Firm filed a privilege log and an opposition motion. On December 12, the district court ordered an in camera review of documents claimed to be privileged. On December 21, the Law Firm surrendered the documents, but together with the documents filed a motion for partial reconsideration, contending that the court should not review some of the documents, the "core work product" documents, until it could make a threshold determination that the government had produced evidence justifying the review. The Law Firm also submitted evidence supporting the documents' classification as "core" or "opinion" work product. At this point, the appellants also entered the picture, intervening on December 28 with an objection to the government's motions.

On March 28, 2008, the district court decided that the crime-fraud exception applied to all the Law Firm's communica-

---

**3.** Future references to "trusts" include, where appropriate, consideration of these ancillary entities.

tions concerning the foreign trusts and ordered these documents disclosed to the government. Some of the documents it reviewed in camera were not disclosed because they did not relate to the trusts; some others were redacted of unrelated material. The court granted that three documents included "opinion work product" but nonetheless ordered their disclosure on grounds that the government had demonstrated a serious need for these documents. It noted that a number of different possible privilege waivers and exceptions were intertwined in the documents, presenting special difficulties. Ultimately, it restricted most of the "work product" documents, but ordered the disclosure of three of them, conditional upon a government stipulation that "it will use the documents and any evidence derived from the documents only in connection with establishing the mental state of Intervenors with respect to any statements to or filings with the government ... on or after July 1, 1997...."

Appellants timely appealed.

## II

### A. Work Product

■ The government challenges the appellants' standing to appeal the district court's judgment as to opinion work product. While the government does not deny that the appellants were rightly given leave to intervene by the district court, it claims that under the circumstances, only the Law Firm or Lawyer could invoke the opinion work product doctrine to protect the documents.

■ Work product protections, unlike the attorney-client privilege, are held by the attorney as well as the client. This court has stated: "the work product privilege belongs to both the client and the attorney, either of whom may assert it. Thus, a waiver by the client of the work product privilege will not deprive the attorney of his own work product privilege, and vice versa."[4] The protection can, of course, be overcome, as to either or both of the involved parties (i.e., the attorney or the client), for a variety of reasons, including if either or both gave or solicited the work product in furtherance of ongoing or future crime or fraud (the "crime-fraud exception"). The party intending crime or fraud cannot invoke the work product doctrine, but if the other party did not intend crime or fraud, that party can invoke it.[5]

In this case, there is no suggestion that Law Firm or Lawyer engaged in criminal or fraudulent conduct or gave advice intending to further such conduct. They therefore could, as they did before the district court, invoke the work product privilege for the relevant documents. Law Firm and Lawyer, however, do not here appeal: only the appellants do. And the appellants' right to invoke the privilege

**4.** *In re: Grand Jury Proceedings,* 43 F.3d 966, 972 (5th Cir.1994). For clarity, we do not here use the term "privilege" to describe work-product protections. These protections may be comparable to traditionally conceived "privileges" in some contexts and not in others and thus occasionally invite meritless challenges to the validity of various rules of civil and criminal procedure.

**5.** As the lower court noted, although it seems to be gaining acceptance in this circuit and elsewhere, this doctrine may not be complete-

ly settled. Settling it is not necessary for our ruling, so we do not here do so. See, for example, dicta by a panel of this court, that "an innocent attorney may invoke the work product privilege even if a prima facie case of fraud or criminal activity has been made out as to the client." *In re: Grand Jury Subpoena,* 220 F.3d 406, 408 (5th Cir.2000); *see also In re Grand Jury Subpoena,* 43 F.3d at 972 (noting the support for this view but refusing to reach it).

has been forfeited by a showing, sufficient to overcome privilege, of their alleged intention of soliciting advice in order to further their criminal activities. Whether we cast this as an issue of standing,[6] or as a merits determination, the upshot is that since the crime-fraud exception applies to appellants as to these documents, the work product argument is not available to them.

The appellants have not answered the government's reasoning. Their claim seems to be that because they paid for this work, they can invoke the privilege. This does not hold when the crime-fraud exception has been successfully invoked, as it has been here. The appellants also invoke the *Perlman* rule, which allows for client intervention in cases where attorneys are compelled to produce protected documents, but again, this right is subject to the crime-fraud exception, and the appellants do not address that point.[7]

We therefore reject the appellants' challenge of the district court's judgment as to the opinion work product documents.[8]

### B. Overbreadth

■ "Under the crime-fraud exception to the attorney-client privilege, the privilege can be overcome where communication or work product is intended to further continuing or future criminal or fraudulent activity."[9] After conducting an in camera review of the relevant documents, the district court invoked this "crime-fraud exception" and ordered the disclosure of documents that would have otherwise been protected by the privilege.

■ The appellants claim that the district court's order of production was overly broad, in that it ordered the production of documents to which the crime-fraud exception could not, as a matter of law, apply, because the documents contained legal advice concerning past conduct not prospective conduct. They also claim that the production order cannot stand because it failed to conduct a document-by-document analysis of the relationship between the privileged documents and the alleged crime or fraud.

■ The distinction between advice regarding past conduct and advice regarding possible future actions can be dispositive. It is not here apt for the basic reason that the conduct in this case was not past in a relevant way at the time the advice was sought and given. To the contrary, the government alleges—and has produced ample evidence to support its allegations—that the criminal actions were ongoing. And occasional backward looks were only part of a forward looking scheme that drew on these validations. The appellants erroneously consider the government's sole allegation to be that the *creation* of

---

6. *See In re: Grand Jury Subpoena*, 220 F.3d at 408–09; *see generally In re: Grand Jury Subpoena*, 43 F.3d at 972.

7. The *Perlman* doctrine, as applied in this context, simply provides a way to avoid the usual bar on appealability in absence of a final order, which is usually, in privilege cases, a contempt finding, but which cannot be guaranteed when the real party at interest is a third party client and not the attorney who is the target of the subpoena. *Perlman v. United States*, 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918); *In re: Matter of Fine*, 641 F.2d 199, 201–03 (5th Cir.1981). The doc-trine is not relevant. The problem here is not one of our jurisdiction to review the rulings by the district court.

8. Because we hold that the crime-fraud exception applies to these documents, we need not reach the question of whether a "serious need" exception exists for opinion work product documents; we express no opinion on this portion of the district court's reasoning.

9. *In re: Grand Jury Subpoena*, 419 F.3d 329, 335 (5th Cir.2005) (*quoting United States v. Edwards*, 303 F.3d 606, 618 (5th Cir.2002)).

the trusts is the source of concern. The government has made it quite clear that erecting the trusts was only the first step, the beginning of the misdeeds involving the trusts. Furthermore, while appellants cast this argument as an issue of law subject to de novo review, the issue is better considered a factual determination subject to clearly erroneous review.[10]

As to the argument that the district court should have conducted a document-by-document review, the appellants fail to demonstrate that the district court did not carefully review each document. The lower court satisfied itself that the crime-fraud exception was met as to each document that related to the trusts. This, the appellants argue, was over broad because the trusts themselves were not illegal. Rather, some acts were allegedly committed, involving the trusts, that were illegal. But this argument falters on the pervasiveness of the alleged criminal acts. The government puts forward a convincing demonstration that these trusts were created fraudulently and were thoroughly devoted to concealment and criminal acts of fraud. All communications at issue seem to have borne a "reasonable relation to the furtherance of ongoing or future crime," and thus to have been properly disclosed.[11]

The claims here are closely related to those that were decided by a previous panel in its sealed decision, mentioned above, regarding documents related to an-

other law firm. That panel's decision provides added support for our ruling today.

## C. Submitting Evidence

Finally, the appellants claim that the district court misapplied FED.R.EVID. 104(a),[12] in that it did not allow the appellants to submit evidence in opposition to the government's disclosure motion and did not weigh all available evidence in determining whether the crime-fraud exception applied.

■ This argument is difficult to comprehend; the appellants do not explain what type of evidence they were not allowed to present. It is true that the district court modified the rather ambitious proposed order the appellants had submitted, which would have explicitly allowed the appellants to submit evidence, but the judge approved the main thrust of their motion, allowing them to intervene. The appellants were allowed, after the district court "denied" them their opportunity to present evidence, to present a substantial brief that appears to have given them more than enough opportunity to make their arguments. The court made a factual finding based on its extensive experience with this case (and it took notice of all previous proceedings in the opinion at issue here) and on its in camera review of the documents. Rule 104 does not erect further requirements.

---

10. "Because the application of the attorney-client privilege is a fact question to be determined in light of the purpose of the privilege and guided by judicial precedents, we review the district court's finding [that the crime-fraud exception applies] for clear error only." *In re: Grand Jury Subpoena,* 419 F.3d at 335 (*quoting In re: Burlington Northern, Inc.,* 822 F.2d 518, 524–25 (5th Cir.1987)) (alteration in original).

11. *In re Grand Jury Subpoena,* 419 F.3d at 347.

12. Rule 104(a) provides:

(a) Questions of admissibility generally. Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b). In making its determination it is not bound by the rules of evidence except those with respect to privileges.

We briefly touch the constitutional argument discussed in a footnote in the opening briefs and in a separate section in the reply brief. The appellants argue that their Fifth Amendment rights were violated by their "property rights" in various documents being taken away without due process. This argument is meritless.

We AFFIRM the judgment of the district court.