United States Court of Appeals
Fifth Circuit

**F I L E D**

**November 28, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 06-60969
_____

In Re: EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

Petitioner

-------------------------

-----------------------
Petition for Writ of Mandamus to the United States
District Court for the
Southern District of Mississippi, Hattiesburg
-----------------------

Before DEMOSS, STEWART, and PRADO, Circuit Judges.

PER CURIAM:[*]

Before us is a petition for writ of mandamus filed by the

Equal Employment Opportunity Commission ("EEOC") after the

district court ordered that an EEOC attorney be deposed and

certain internal documents be produced despite the EEOC's

assertion of privilege. Because the deposition and documents are

privileged and no exception to privilege has been shown, we GRANT

the writ.

---

[*] Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIRCUIT
RULE 47.5.4.

-1-

## I.  FACTUAL AND PROCEDURAL BACKGROUND

This mandamus petition comes at the tail end of a lawsuit brought by the EEOC against Agro Distribution, L.L.C. ("Agro") for alleged violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-213 (2000).  To put the current issues before this court in context, a brief review of the underlying facts is necessary.  As determined by the district court in its summary judgment order, Henry Velez ("Velez"), an employee of Agro, was born with a physical impairment that caused the abnormal development of his skin and the absence of any sweat glands.  According to Velez, he experiences difficulties doing manual labor when the temperature is greater than eighty degrees Fahrenheit.  To compensate for his condition in warm weather, Velez takes frequent breaks, stands in front of a fan, and douses himself with water.

On July 15, 2002, Velez and all the other non-office Agro employees were ordered to report at 6:00 a.m. on July 16, 2002, to load empty barrels onto a trailer.[1]  Velez told his supervisor that this type of assignment had made him sick before and asked to be excluded.  His supervisor did not exclude him, and Velez chose not to report for the job or at his regularly assigned

---

[1]  A "petite female" was excepted from this requirement.

time.  The barrel-loading job was completed by 8:00 a.m. at which time the temperature had yet to exceed seventy degrees.  Velez was terminated as a result of his failure to report for work.

Velez filed a charge of discrimination with the EEOC, and the charge was investigated by LaQuida Small ("Small").  According to Agro, Small was rude during her visit to Agro, yelling and making demeaning comments, and seemed to have already made up her mind about Velez's claim.  Small issued a predetermination notice, advising Agro of her intention to recommend a cause finding, to which Agro responded by pointing out several factual errors in Small's notice.  The EEOC then issued its determination on July 22, 2003, finding that a violation of the ADA had occurred.  The determination letter sought back pay, reinstatement, and compensatory damages in excess of $156,000.

The EEOC filed the instant lawsuit on September 27, 2004, claiming that Agro violated the ADA when it terminated Velez.  There is little evidence that the EEOC attempted meaningful conciliation of the case prior to and during the litigation, although the EEOC eventually withdrew its request for reinstatement and back pay.  Notably, Velez had obtained a higher paying job that he liked better than his job with Agro.

Following substantial discovery, Agro moved for summary

judgment, which the district court granted.  In its order, the district court noted that it "appear[ed] that the EEOC did not attempt conciliation in good faith . . . ."  (Mem. Op. & Order at 10.)  However, the district court ultimately granted summary judgment on the ground that Velez was not "disabled" as defined by the ADA.  The district court found that Velez had held numerous jobs requiring manual labor, and thus was not substantially limited in the major life activity of working.  (Id. at 14-15.)

Following the district court's grant of summary judgment, Agro moved for attorneys' fees pursuant to 42 U.S.C. § 12205, which gives the court discretion to award attorneys' fees to the prevailing party in an ADA case.  When the prevailing party is the defendant, as in this case, a court must find that the plaintiff's action was "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith" before awarding attorneys' fees.  Christiansburg Garment Co. v. E.E.O.C., 434 U.S. 412, 421 (1978).  Agro contended attorneys' fees were appropriate because the EEOC refused to conciliate and continued to press its suit despite knowing that Velez was not disabled.

While Agro's motion for attorneys' fees was under consideration, Agro filed with the district court an affidavit

-4-

from its attorney and a September 7, 2006, decision from the Merit Systems Protection Board ("MSPB decision") in a suit brought by Prisca DeLeonardo ("DeLeonardo") against the EEOC. DeLeonardo v. EEOC, AT-1221-06-0340-W-1, 2005 WL 2582680 (M.S.P.B. Sept. 7, 2006). DeLeonardo, an attorney with the EEOC, alleged she had been retaliated against for whistleblowing. The administrative judge dismissed DeLeonardo's complaint for failing to allege that she had engaged in whistleblowing, but the MSPB reversed, finding that her allegations were sufficient to state a claim.

Of particular importance to this case was DeLeonardo's allegation that "in May 2005, she disclosed to Gwendolyn Reams, the agency's Associate General Counsel, that Mr. Guerrier 'misrepresented and omitted facts in his report to Headquarters' in a particular case, so that the case could be approved for litigation." Id. at *2. Charles Guerrier was the EEOC's Regional Attorney in its Birmingham office, and Velez's case against Agro was handled by the EEOC's Birmingham office.

Agro's counsel stated in his affidavit that DeLeonardo had contacted him in May 2005, stating she would be entering an appearance in Velez's case. (Ehrhardt Aff. at 3.) Upon discussing the case with DeLeonardo, Agro's counsel contends that DeLeonardo expressed surprise at some of the facts as he relayed

-5-

them to her, indicating that this was not the information the Commission[2] had in front of it. (Id.) Specifically, DeLeonardo seemed unaware that the temperature during the barrel-loading process never exceeded seventy degrees and that Velez had previously performed this type of manual labor. (Id.) Agro's counsel faxed her several witness statements confirming that Velez had performed this type of manual labor in the past, and DeLeonardo "indicated that she was very uncomfortable with the EEOC's position . . . ." (Id. at 3-4.)

DeLeonardo ultimately never entered an appearance in the case. Agro now believes the reference in the MSPB decision to DeLeonardo's claim that Guerrier misled the EEOC into filing litigation refers to the Velez case. Consequently, Agro sought production of DeLeonardo's complaint that resulted in the MSPB decision. The EEOC refused to let DeLeonardo disclose the complaint. Agro then noticed DeLeonardo's deposition. The EEOC filed a motion for protective order, citing attorney-client privilege, work product privilege, and the deliberative process privilege.

The district court conducted a telephone conference and

---

[2] As used in this case, "Commission" refers to the five-member commission that heads the EEOC. The Commission's approval is required to proceed with litigation in certain cases.

-6-

denied the EEOC's motion.  In its oral ruling, the district court ordered that Agro could question DeLeonardo about her mental impressions regarding the propriety of bringing or continuing the lawsuit and the motivation for the litigation if the suit was not justified.  The court also ordered that the EEOC produce (1) Guerrier's report to the Office of General Counsel in which Guerrier recommended litigation; and (2) the assessment of the General Counsel that went to the Commission recommending litigation.

After the district court denied the EEOC's motion to stay, the EEOC filed the instant petition for writ of mandamus with this court.  We stayed the deposition of DeLeonardo so that we could fully analyze the issues presented in this case.  Both sides have briefed the issues, and we now turn to the merits of our decision.

## II.  ANALYSIS

A writ of mandamus is an extraordinary remedy that is reserved for extraordinary situations.  In re Terra Int'l, Inc., 134 F.3d 302, 305 (5th Cir. 1998) (per curiam).  To obtain a writ of mandamus, the following criteria must be met: (1) the petitioner must have no other adequate means to obtain the relief it desires; (2) the petitioner's right to the writ must be clear and indisputable; and (3) the issuing court, in the exercise of

-7-

its discretion, must be satisfied that the writ is appropriate under the circumstances. Cheney v. U.S. Dist. Ct. for the Dist. of Columbia, 542 U.S. 367, 380-81 (2004); In re United States, 397 F.3d 274, 282 (5th Cir. 2005) (per curiam).

As to the first requirement, this court has recognized that mandamus relief is appropriate in the context of privileged documents, as an order requiring production of those documents would not be reviewable on appeal. In re U.S. Dep't of Homeland Sec., 459 F.3d 565, 568 (5th Cir. 2006). "[T]he difficulty of obtaining effective review of discovery orders, the serious injury that sometimes results from such orders, and the often recurring nature of discovery issues" support the use of mandamus in exceptional cases. Id. (quoting In re Burlington N., Inc., 822 F.2d 518, 522 (5th Cir. 1987)). In this case, the district court ordered the deposition of an EEOC attorney and the production of several documents that the EEOC claims are privileged. Assuming privilege exists, there is no adequate remedy on appeal for the revelation of this information.

Having satisfied the first requirement of mandamus, the court now determines whether the EEOC has met its burden with respect to the second mandamus requirement–demonstrating that its right to mandamus relief is clear and indisputable.

A.   The Parties' Arguments and the District Court's Order

To fully analyze the necessity and relevance of the information Agro seeks to discover, we must first consider what Agro must prove to receive attorneys' fees, what Agro hopes to learn through the DeLeonardo deposition and the production of the internal EEOC documents, and how that information will support Agro's claim.[3]  As noted earlier, Agro seeks attorneys' fees as a prevailing party pursuant to 42 U.S.C. § 12205.  This court has determined that the considerations that govern the ADA's fee-shifting provision are the same as those that govern fee-shifting under Title VII and 42 U.S.C. § 1988.  No Barriers, Inc. v. Brinker Chili's Tex., Inc., 262 F.3d 496, 498 (5th Cir. 2001).  Under that standard, a prevailing defendant may not receive fees "unless a court finds that [the plaintiff's] claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so."  Id. (quoting Christiansburg, 434 U.S. at 422).  In determining whether a suit is frivolous, a court should consider factors such as whether the plaintiff established a prima facie case, whether the defendant offered to settle, and whether the court dismissed the case or

_____

[3]  Nothing in this opinion should be construed as a comment one way or the other on the merits of Agro's motion for attorneys' fees.  We leave that decision to the district court.

-9-

held a full trial.  <u>Myers v. City of W. Monroe</u>, 211 F.3d 289, 292 (5th Cir. 2000) (construing 42 U.S.C. § 1988); <u>Walker v. City of Bogalusa</u>, 168 F.3d 237, 240 (5th Cir. 1999) (same).  A suit is "frivolous" if it is "so lacking in arguable merit as to be groundless or without foundation . . . ."  <u>Walker</u>, 168 F.3d at 240 (internal quotes and citation omitted).

Here, Agro contends that the EEOC either knew or should have known that Velez was not disabled before it filed suit.  Specifically, Agro argues that Velez had performed similar types of manual labor in the past.  Further, Agro asserts that the EEOC either knew or should have known that the working conditions on the day Velez refused to report were not above eighty degrees, so Velez's alleged disability would not have caused him any problems.  Stated differently, Agro claims that the facts available to the EEOC, through Velez's testimony and the information received by DeLeonardo, rendered further litigation frivolous.

In its response, and key to this court's decision, the EEOC does not assert that it was unaware of this information or that it was misled by one of its attorneys into filing suit.  Instead, the EEOC defends against the imposition of attorneys' fees on the ground that there were sufficient facts to go forward with the suit.  In other words, in its argument regarding the propriety of

an attorneys' fees award, the EEOC does not deny that it was aware of or had access to the information that Agro contends made this suit frivolous.  Therefore, for purposes of this decision, the information known by Guerrier, regardless of whether he communicated it to the Commission, and the information obtained by DeLeonardo, regardless of whom she communicated it to, was known to the EEOC because it was known by its attorneys.[4]

To support its claim for attorneys' fees, Agro seeks to depose DeLeonardo on several topics.  In its argument before the district court, Agro stated it was interested in (1) what DeLeonardo communicated in May 2005; (2) when she communicated it; (3) how she communicated it; (4) what specific facts led her to believe Guerrier did not properly advise the Commission; and (5) what action was taken in response to DeLeonardo's revelation of the "real truth and the complete truth" to the EEOC. (Transcript of 10/23/06 hearing at 29.)  As stated in its briefing before this court, Agro is not seeking to discover DeLeonardo's or Guerrier's mental impressions of this case. (Agro Br. at 19.)  Instead, Agro claims it only wants to know why the EEOC continued to litigate the case after being advised by

---

[4]  We do not now decide whether the EEOC could deny that it was aware of information possessed by its own attorneys; however, in this case, the EEOC has not denied it.

-11-

DeLeonardo that it had been misled into pursuing this litigation in the first place. (Id. at 20.)

In sum, based on its arguments to the district court and to this court, Agro seeks the following information: (1) what Guerrier said to the Commission; (2) why Guerrier's statements were misleading; (3) what DeLeonardo revealed; and (4) why the litigation continued.  As noted above, the district court required the EEOC to produce the documents sent from Guerrier to the General Counsel and from the General Counsel to the Commission regarding possible litigation.  (Transcript of 10/23/06 hearing at 35-36.)  The district court also ordered that DeLeonardo be deposed and that Agro could question her about her mental impressions of the case and why she believed the EEOC chose to continue with the litigation.  (Id. at 32-33.)  The EEOC contends this information is privileged under the attorney-client, work product, and deliberative process privileges.  We will first consider the attorney-client and work product privileges.

B.   Attorney-Client and Work Product Privileges

As the party asserting privilege, the EEOC bears the burden of demonstrating that DeLeonardo's testimony and the internal EEOC documents are privileged.  See United States v. Rodriquez, 948 F.2d 914, 916 (5th Cir. 1991) ("The burden of establishing

-12-

privilege rests on the party who invokes it."). With respect to the attorney-client privilege, we note that because this case concerns the adjudication of federal rights, the federal common law of attorney-client privilege applies. Willy v. Admin. Review Bd., 423 F.3d 483, 495 (5th Cir. 2005).

The attorney-client privilege is recognized as "the oldest of the privileges . . . known to the common law." United States v. Zolin, 491 U.S. 554, 562 (1989) (internal quotation marks omitted). Its purpose is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." Id. (internal quotation marks omitted); see also In re Grand Jury Subpoena, 419 F.3d 329, 338 (5th Cir. 2005). Simply stated, under this rule, "an attorney may not disclose his client's confidences." Willy, 423 F.3d at 495.

Similarly, the work product privilege "serves to protect the interests of clients and their attorneys in preventing disclosures about the case by shielding the lawyer's mental processes from his adversary." In re Grand Jury, 419 F.3d at 339 (internal citations and quotation marks omitted). The work product privilege extends to and protects documents prepared in anticipation of litigation. In re Kaiser Aluminum & Chem. Co.,

-13-

214 F.3d 586, 593 (5th Cir. 2000) (citing FED. R. CIV. P. 26(b)(3)).

Here, the information sought by Agro and ordered to be disclosed by the district court falls within the attorney-client and work product privileges.  With respect to the proposed testimony from DeLeonardo, Agro seeks to delve into her discussions with other EEOC attorneys about the merits, or lack thereof, of this case, specifically, whether the facts warranted continued litigation.  These communications are protected by the attorney-client privilege.  See Cedrone v. Unity Sav. Ass'n, 103 F.R.D. 423, 429 (E.D. Pa. 1984) (finding oral communications between attorneys in the same office concerning the representation of a client to be privileged); see also RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 70 cmt. g. (2000).  Therefore, DeLeonardo's testimony as to what Guerrier told the General Counsel, what DeLeonardo told other EEOC attorneys, and what those attorneys told DeLeonardo about why the litigation was going to continue are all privileged communications.

As to the reports from Guerrier to the General Counsel and from the General Counsel to the Commission, they are also clearly privileged.  The documents, as described by the parties, contain an analysis of the facts of Velez's case, both strengths and weaknesses, and a recommendation of whether litigation is

-14-

appropriate.  In <u>NLRB v. Sears, Roebuck & Co.</u>, the Supreme Court considered whether internal memoranda produced by the Office of General Counsel discussing the General Counsel's reasons for filing suit were covered by the work product privilege.  421 U.S. 132 (1975).  The Supreme Court held that such documents fell squarely within the work product protection.  <u>Id.</u> at 160.  The Supreme Court noted that "[w]hatever the outer boundaries of the attorney's work-product rule are, the rule clearly applies to memoranda prepared by an attorney in contemplation of litigation which set forth the attorney's theory of the case and his litigation strategy."  <u>Id.</u> at 154.

Agro does not contest that the information it seeks by the deposition and document production is privileged, except to argue that the attorney-client and work product privileges do not protect testimony concerning the factual accuracy of Guerrier's report.  However, regardless of its accuracy, Guerrier's report is still a communication between EEOC attorneys and is protected by privilege.  Further, as discussed in the next section, given the EEOC's position on Agro's claim for attorneys' fees, the factual accuracy of Guerrier's report is not relevant. Therefore, DeLeonardo's deposition and the documents ordered to be produced by the district court are privileged under the attorney-client and work product doctrines, and Agro must show an

-15-

exception to privilege.

C.   Necessity Exception

The first possible exception to privilege in this case is necessity, which appears to be the basis for the district court's decision.  The district court stated that this was a search for truth and that it needed the best possible information to make its decision regarding attorneys' fees.  (Transcript of 10/23/06 hearing at 31-32.)  The court also said that there was no other way for it to get the information it needed.  (Id. at 35.)

There is a necessity exception to the work product privilege, as found in Rule 26(b)(3) of the Federal Rules of Civil Procedure, which states that documents "prepared in anticipation of litigation or for trial" may be discovered "only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means."[5] However, even in such a case, the court "shall protect against

_____

[5]   There is a question as to whether the attorney-client privilege is subject to a similar exception based on necessity in these circumstances.  See Arcuri v. Trump Taj Mahal Assocs., 154 F.R.D. 97, 105 (D.N.J. 1994) (stating the attorney-client privilege has no "needs" exception).  However, because necessity does not provide a reason to disclose the communications in this case, the court need not reach whether the attorney-client privilege is even subject to such an exception.

disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney . . . concerning the litigation."
Id.

Applying this to the order of the district court, it becomes clear that the district court exceeded what was appropriate in this case. The documents from Guerrier to the General Counsel and from the General Counsel to the Commission, as described by the parties, contain the mental impressions, conclusions, opinions, and legal theories of attorneys involved in the Velez case. Thus, despite any "necessity" arguments, under Rule 26(b)(3), the district court cannot order their production.[6]

There is also little or no need for the district court to delve into what information Guerrier withheld from the Commission. The only reason Guerrier's alleged misleading communication would be relevant to the issue of attorneys' fees is if it could somehow absolve the EEOC of its responsibility for filing a frivolous lawsuit. However, as noted above, the EEOC has not defended against the imposition of attorneys' fees on the

_____

[6] Agro argues that the factual portions of the documents could be produced. The district court, however, ordered production of the entire file, not just the factual portions. Further, given the analysis in this case, the factual portions of the documents are not so necessary to the attorneys' fees argument as to overcome privilege.

-17-

ground that it was misled by Guerrier into filing suit.[7]

Therefore, the EEOC, through Guerrier and later DeLeonardo, was in possession of the facts that Agro contends made this a frivolous lawsuit. Whether these facts were appropriately communicated between different employees and the Commission is not a question the district court need answer.

Further, there is no "substantial need" for DeLeonardo's testimony regarding her belief of the propriety of continuing the lawsuit or the EEOC's reasons for doing so. Whether the lawsuit should have been continued is a question for the district court to answer in its determination of frivolousness. We are confident the district court can make that decision without the opinion testimony of DeLeonardo.

With respect to the EEOC's reasons for continuing the suit, Agro argues extensively that it needs to know the EEOC's motivation so it can demonstrate bad faith on the part of the EEOC. However, a bad faith finding is not required for an award of attorneys' fees. Christiansburg, 434 U.S. at 421. While we do not deny that evidence of bad faith would be helpful to Agro's case, it does not, in and of itself, justify breaching attorney-

---

[7] Were the EEOC to contend that attorneys' fees were unwarranted because it had been misled by Guerrier, there would be a strong argument for waiver of privilege.

client privilege.  To hold otherwise would open the door to the routine deposition of attorneys any time a claim of frivolousness or bad faith is made.  Consequently, the necessity exception does not warrant the deposition of DeLeonardo or the production of the internal EEOC documents in this case.

D.    Crime-Fraud Exception

Agro also argues that the crime-fraud exception warrants disclosure of the privileged information it seeks.  Specifically, Agro contends that the EEOC's decision to continue with frivolous litigation was fraudulent and that this fraud should be sufficient to overcome privilege.  The district court did not appear to rely on the crime-fraud exception in its ruling, but we will address it, as it has been raised at both the district court and appellate levels.

The crime-fraud exception applies to both the attorney-client and work product privileges.  In re Grand Jury, 419 F.3d at 335.  Pursuant to the crime-fraud exception, privilege is overcome when an attorney-client communication or work product is intended to further continuing or future criminal or fraudulent activity.  Id.  The party seeking discovery of privileged information bears the burden of establishing a prima facie case that the attorney-client relationship was intended to further criminal or fraudulent activity.  Id.

-19-

Agro did not produce any evidence or argument at the district court level that the EEOC's actions constituted a crime.[8]  Therefore, the question is whether Agro produced sufficient evidence that the EEOC and its attorneys were engaged in ongoing fraudulent activity.  It has not.  The only evidence of fraud in this case is Agro's argument and evidence that the EEOC's lawsuit was frivolous, which does nothing to distinguish it from the many other cases in which the defendant believes the plaintiff's claims are meritless.  We do not construe the crime-fraud exception so broadly.

The one unique feature of this case is the fact that Agro has found an EEOC attorney who appears to agree that the case lacked merit.  This, however, does not mean that the EEOC was engaged in fraud.  Negligent handling of the case or sheer incompetence could just as easily explain why the EEOC continued to litigate, assuming the case did, in fact, lack merit.  Further, it is not unusual for attorneys to disagree about the merits of a case.  This disagreement does not, however, constitute fraud.

---

[8]  Agro asserts in a footnote in its brief that Guerrier's actions in allegedly making a false statement to a government agency may constitute a crime.  See 18 U.S.C. § 1001. Agro, however, did not raise this issue before the district court and has, therefore, waived it on appeal.  See Tex. Commercial Energy v. TXU Energy, Inc., 413 F.3d 503, 510 (5th Cir. 2005).

We understand the district court's concern that an EEOC attorney may have misled the Commission into approving frivolous litigation. However, the resolution of that issue has little or no bearing on the question of whether the litigation was actually frivolous, which is all that is at issue at this stage of the case. The question of frivolousness can be answered on the facts of the case without delving into the confidential and privileged communications of EEOC attorneys.

In sum, the information sought by Agro by way of DeLeonardo's deposition and the production of the internal EEOC documents is privileged and no exception to privilege has been shown. Therefore, the EEOC has met its burden under the mandamus analysis of showing that its right to mandamus relief is clear and indisputable.[9] Given the facts of this case, the privileges at issue, and the analysis above, we, in the exercise of our discretion, determine that it is appropriate to grant the writ of mandamus.

### III. CONCLUSION

For the foregoing reasons, we GRANT the writ of mandamus.

WRIT GRANTED.

---

[9] Because we reach this decision on the basis of the attorney-client and work product privileges alone, we do not reach the issue of the deliberative process privilege.

Judge DEMOSS would deny the petition for writ of mandamus and would deny the motion for stay of the discovery proceedings.