ADVANCED TECHNOLOGY
INCUBATOR, INC.,
Plaintiff,

v.

SHARP CORPORATION, Sharp Electronics Corporation, Dai Nippon Printing, and DNP Color Techno Kameyama Co. Ltd., Defendants.

No. A–09–CV–410 LY.

United States District Court,
W.D. Texas,
Austin Division.

June 10, 2009.

Order Denying Reconsideration
July 7, 2009.

---

Avelyn Marie Ross, David Paul Blanke, David B. Weaver, Meredith J. Fitzpatrick, Vinson & Elkins, L.L.P., Austin, TX, Barry E. Engel, Daniel F. Allison, Morgan L. Copeland, Jr., Peter Elton Mims, Vinson & Elkins, LLP, Houston, TX, William B. Dawson, Vinson & Elkins, LLP, Dallas, TX, for Plaintiff.

Christopher E. Chalsen, Dana Weir, Lawrence T. Kass, Milbank Tweed Hadley & McCloy, New York, NY, Sean Fletcher Rommel, Patton Roberts PLLC, Texarkana, TX, for Defendants.

## ORDER

ROBERT PITMAN, United States Magistrate Judge.

Before the Court are Plaintiff's Motion to Quash Subpoena of Kevin Fiur and for a Protective Order, filed May 22, 2009 (Clerk's Dkt. # 1) and Response in Opposition to Motion to Quash Subpoena of Kevin Fiur and for a Protective Order, filed June 5, 2009 (Clerk's Dkt. # 7). The motion was referred to the undersigned Magistrate Judge for resolution pursuant to 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C to the Local Rules of the United States District Court for the Western District of Texas.

## I. BACKGROUND

Plaintiff Advanced Technology Incubator, Inc. ("Plaintiff") initiated this suit alleging patent infringement against Sharp Corporation, Sharp Electronics Corporation, Dai Nippon Printing and DNP Color Techno Kameyama Co. Ltd. (collectively, "Defendants") in

the Eastern District of Texas. The action is still pending in the Eastern District of Texas.

Plaintiff is a corporation founded by Dr. Zvi Yaniv ("Yaniv") and based in Austin, Texas.[1] Plaintiff owns several patents that cover Yaniv's technology for manufacturing liquid crystal displays ("LCDs").[2] Defendants are corporations that manufacture LCD televisions.[3] Plaintiff filed this action asserting that Defendants method of manufacture is infringing on Plaintiff's Patent No. 37,682 ('682 Patent).[4]

Dai Nippon Printing and DNP Color Techno Kameyama Co. Ltd. (collectively, "DNP") have issued a subpoena to depose Kevin Fiur ("Fiur").[5] Fiur is an attorney licensed to practice in Texas and California; however, he is not an attorney of record in this suit.[6] Yaniv has consulted with Fiur since the summer of 2005 on various transactions, patent matters, including the '682 Patent, and other litigation matters.[7] Plaintiff asserts that any information that Fiur may provide is protected by the attorney-client privilege and/or the attorney work product doctrine. Alternatively, Plaintiff argues that the deposition would result in an undue burden to Fiur. Accordingly, Plaintiff seeks to quash the subpoena and requests a protective order preventing the deposition of Fiur.

## II. CURRENT MOTION

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, Plaintiff seeks to quash the subpoena to depose Fiur. Further, pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, Plaintiff seeks a protective order to prevent the deposition of Fiur.

1. (Declaration of Zvi Yaniv in Support of Motion to Quash Subpoena and Motion for Protection ¶ 4, attached to Clerk's Dkt. # 1 ("Yaniv Decl."))

2. (*Id.* ¶ 5.)

3. (Complaint for Damages and Injunctive Relief for Patent Infringement ¶¶ 2–3, attached to Clerk's Dkt. # 1 ("Compl."))

4. (*Id.* ¶¶ 26–32.)

5. (Subpoena to Testify at a Deposition or to Produce Documents in a Civil Action, attached to Clerk's Dkt. # 1 ("Subpoena"))

## III. ANALYSIS

Plaintiff raises two grounds to resist the deposition of Fiur: (1) that any information he may provide is protected by the attorney-client privilege and/or the work product doctrine and (2) that the deposition is unduly burdensome to Fiur. The undersigned considers each basis in turn.

### A. Attorney–Client Privilege and Work Product Doctrine

■ A court "must quash or modify a subpoena" that "requires disclosure of privileged or other protected matter." Fed. R.Civ.P. 45(c)(3)(A)(iii). "The attorney-client privilege exists to encourage clients to be candid with their attorneys." *Industrial Clearinghouse, Inc. v. Browning*, 953 F.2d 1004, 1007 (5th Cir.1992).[8] However, "blanket claims of privilege are disfavored." *Nguyen v. Excel Corp.*, 197 F.3d 200, 206 n. 16 (5th Cir.1999). Further, a party asserting the privilege bears the burden of proving the privilege is applicable. *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir.2001). The attorney-client privilege must be applied sparingly and interpreted narrowly because "assertions of privilege inhibit the search for truth." *Perkins v. Gregg County*, 891 F.Supp. 361, 363 (E.D.Tex.1995).

■ "The party asserting that communication is protected by the privilege must prove: (1) that he made a confidential communication; (2) to a lawyer or his subordinate; (3) for the primary purpose of securing a legal opinion or legal services, or assistance in some legal proceeding." *United States v. Robinson*, 121 F.3d 971, 974 (5th Cir.1997). The attorney-client privilege

6. (Declaration of Kevin Fiur in Support of Motion to Quash Subpoena and Motion for Protection ¶ 4, attached to Clerk's Dkt. # 1 ("Fiur Decl."))

7. (Fiur Decl. ¶ 8; Yaniv Decl. ¶ 6.)

8. Federal law controls the scope of the privilege because this is a suit premised on questions of federal law. *See, e.g., Willy v. Admin. Review Bd.*, 423 F.3d 483, 495 (5th Cir.2005).

protects two types of communication, those made by a client to his lawyer for the purposes of obtaining legal advice and those made by the attorney to the client in the course of giving legal advice. *United States v. Mobil Corp.*, 149 F.R.D. 533, 536 (N.D.Tex.1993).

■ Attorneys do not always act in a legal capacity. When an attorney serves a client in a way that is not legal in nature, the attorney-client privilege does not protect their communications. *United States v. Davis*, 636 F.2d 1028, 1044 (5th Cir.1981) ("An attorney who acts as his client's business advisor, or his agent for receipt or disbursement of money or property to or from third parties is not acting in a legal capacity ..."); *see also In re Lindsey*, 148 F.3d 1100, 1106 (D.C.Cir.1998) ("Where one consults an attorney not as a lawyer but as a friend or as a business adviser or banker, or negotiator ... the consultation is not professional nor the statement privileged.") (quoting 1 MCCORMICK ON EVIDENCE § 88, at 322–24 (4th ed.1992)). *United States v. Horvath*, 731 F.2d 557, 561 (8th Cir.1984) ("The attorney-client privilege extends only to communications made for the purpose of facilitation the rendition of *legal* services to the client. Thus, where the attorney acts merely as a conduit for the client's funds, as a scrivener for the client, or as a business adviser, the privilege is inapplicable." (internal citations omitted) (emphasis in original)).

■ There are conflicting interpretations of Fiur's relationship with Plaintiff. Both Yaniv and Fiur state in their declarations that Fiur provided strictly legal advice to Yaniv and Plaintiff.[9] However, Fiur also attests that he left the practice of law for a time to pursue a business degree.[10] He only returned to legal practice immediately prior to his interaction with Yaniv.[11] DNP con-

tends that Fiur served more as a business partner who explored opportunities for Plaintiff to market and license Plaintiff's intellectual property.

Currently, Fiur is the president and CEO of IP Knowledge Ventures though he fails to describe the nature of this corporation.[12] Upon review of IP Knowledge Ventures's website, a copy of which is attached to Defendant's response,[13] it is apparent that the corporation that Fiur operates provides more than purely legal advice. IP Knowledge Ventures "is an intellectual property acquisition and services company" that works with professionals to "generate revenue" from their intellectual property assets.[14] The business' specialty is "identifying, valuing, acquiring, and monetizing" intellectual property.[15] It is not until the fourth paragraph of the corporation's central web page that legal services are even mentioned and, even then, they are under-emphasized. The website states: "[w]e are 'business transaction' oriented but quite capable and willing to slug it out at the courthouse if a market participant is infringing and refuses to negotiate."[16] If litigation occurs, the company relies on its "alliances with leading IP and trial law firms."[17] It is unclear which of the services, if any, mentioned on IP Knowledge Venture's website Fiur provided for Plaintiff or currently provides. Nevertheless, it offers a telling glimpse of the services Fiur may testify about during a deposition.

Fiur notes that he has provided legal advice regarding this suit.[18] Significantly, however, Fiur is not an attorney of record in this case. Therefore, Plaintiff's assertion that he be afforded a higher degree of protection due to his status as opposing counsel is unavailing.[19] It is apparent from the privilege log submitted by the parties that Fiur

---

9. (Fiur Decl. ¶¶ 7–8, 10; Yaniv Decl. ¶¶ 6–10.)

10. (Fiur Decl. ¶ 6.)

11. (Fiur Decl. ¶¶ 6–7.)

12. (Fiur Decl. ¶ 5.)

13. (Exhibit E, D. Resp.)

14. (*Id.*)

15. (*Id.*)

16. (*Id.*)

17. (*Id.*)

18. (Fiur Decl. ¶ 8.)

19. (Mtn. at 4.)

had repeated contacts with third parties such as Song Jung, who is counsel for a corporation not involved in this suit.[20] Jung also had contact with Yaniv.[21] Without a more detailed understanding of the relationship between Fiur, Yaniv, and Jung, it is impossible to determine whether any of their communications are privileged. It appears that Plaintiff recently admitted that some of the interactions between Fiur and Jung are not privileged because it recently produced "hundreds of pages" of communication between Fiur and Jung after Plaintiff filed this motion to quash.[22]

Plaintiff's assertion that the entirety of the deposition would concern privileged matters is the type of blanket assertion of privilege that is disfavored. Consequently, the motion to quash must be denied. It is impossible to know whether individual questions may elicit information that is protected by privilege. As Plaintiff recently admitted by producing a significant number of documents, not all information in Fiur's possession is protected by privilege. Simple possession of a law license does not result in blanket immunity from a deposition. Therefore, the motion to quash on this ground is denied. This decision does not, however, prevent Fiur from asserting the privilege, if applicable, in response to certain questions during the deposition.

■ Plaintiff's attempt to quash the deposition pursuant to the work product doctrine is similarly unavailing. The work product doctrine, codified at Rule 26(b)(3)(A), prevents the disclosure of "documents and tangible things that are prepared in anticipation of litigation or for trial ..." FED.R.CIV.P. 26(b)(3)(A). Work product protections also shield a lawyer's mental processes from his adversary. FED.R.CIV.P. 26(b)(3)(B); *In re EEOC*, 207 Fed.Appx. 426, 432 (5th Cir. 2006). In order for work product protection to attach, the "primary motivating purpose" behind the creation of a document must be to aid future litigation. *In re Kaiser Aluminum*, 214 F.3d 586, 593 (5th Cir.2000).

■ Similar to the discussion above, it is impossible to determine which of Fiur's advice or documents were created in preparation for litigation without questioning Fiur directly. Without additional knowledge regarding the relationship between Fiur and Yaniv, it is unclear whether Fiur acted as a business advisor, where the work product doctrine would have no effect, or he acted as an attorney and prepared materials for this litigation. Finally, this ground for quashing the deposition must be denied because Plaintiff fails to explain it with any particularity; the majority of Plaintiff's analysis is spent discussing the attorney-client privilege.

## B. Burden of Deposition

■ A court must quash a subpoena where it subjects a person to undue burden. FED.R.CIV.P. 45(c)(3)(A)(iv). Additionally, a court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense ..." FED.R.CIV.P. 26(c)(1). Whether a subpoena imposes an undue burden is a question of reasonableness determined by balancing the benefits and burdens of the deposition and whether the information is obtainable from an alternative source. *Positive Black Talk v. Cash Money Records*, 394 F.3d 357, 377 (5th Cir.2004). The party seeking to quash the deposition bears the burden of proving that the subpoena is unduly oppressive. *Wiwa v. Royal Dutch Petroleum*, 392 F.3d 812, 818 (5th Cir.2004).

■ Plaintiff does not contend that Fiur's deposition is inconvenient in its location, date or length. Plaintiff does not request modification of the subpoena in order to make it less burdensome. *See Wiwa*, 392 F.3d at 818 ("modification of a subpoena is preferable to quashing it outright.") Instead, Plaintiff merely argues that the information Fiur would offer would be duplicative of the information already produced in discovery. A mere review of Plaintiff's privilege log demonstrates that Fiur had significant and repeated contacts with several individuals with knowledge of the details relevant to this case.

---

**20.** (Exhibit H, D. Resp.)

**21.** (*Id.*)

**22.** (D. Resp. at 5.)

Further, Fiur himself admits that advised Yaniv and the corporate Plaintiff.[23] Finally, it is clear that Fiur has unprivileged, potentially relevant information as evidenced by Plaintiff's recent disclosure of a large number of documents involving communications by Fiur. A deposition is a an acceptable method of discovery to question Fiur about these documents and his involvement with Plaintiff.

Consequently, the Court concludes that Plaintiff has failed to meet its burden of proving that the deposition of Fiur would be unduly burdensome.

## IV. CONCLUSION

In accordance with the discussion above, Plaintiff's Motion to Quash Subpoena of Kevin Fiur and for a Protective Order, filed May 22, 2009 (Clerk's Dkt. # 1) is **DENIED.**

### *ORDER*

Before the Court in the above styled and numbered cause is Plaintiff Advanced Technology Incubator, Inc.'s ("ATI") Motion To Reopen The Case filed June 17, 2009 (Clerk's Document No. 13), and Defendants Dai Nippon Printing and DNP Color Techno Kameyama Co., Ltd.'s (collectively "DNP") response filed July 1, 2009 (Clerk's Document No. 18); ATI's Motion For Reconsideration Of The Order Denying Plaintiff's Motion To Quash filed June 17, 2009 (Clerk's Document No. 14) and DNP's response filed July 1, 2009 (Clerk's Document No. 17); DNP's Motion For Leave To File Sealed Exhibits In Support of Its Response In Opposition To ATI's Motion For Reconsideration filed July 1, 2009 (Clerk's Document No. 16); ATI's Motion To Toll The Time To File Objections Under Federal Rule of Civil Procedure 72 filed June 18, 2009 (Clerk's Document No. 15) and DNP's response filed July 1, 2009 (Clerk's Document No. 19). The Court has considered the motions, responses, the file in this cause, and the applicable law, and will reopen the case to address these pending motions.

**IT IS ORDERED** that ATI's Motion To Reopen The Case filed June 17, 2009 (Clerk's

Document No. 13) is **GRANTED TO THE FOLLOWING EXTENT:**

**IT IS ORDERED** that ATI's Plaintiff's Motion For Reconsideration Of The Order Denying Plaintiff's Motion To Quash filed June 17, 2009 (Clerk's Document No. 14) is **DENIED.**

**IT IS FURTHER ORDERED** that ATI's Plaintiff's Motion To Toll The Time To File Objections Under Federal Rule Of Civil Procedure 72 filed June 18, 2009 (Clerk's Document No. 15) is **GRANTED TO THE EXTENT** that the parties may file objections to the United States Magistrate Judge's Order rendered June 10, 2009 (Clerk's Document No. 11) **on or before Friday, July 17, 2009,** and in all other respects is **DENIED.** *See* Fed.R.Civ.P. 72(a).

**IT IS FURTHER ORDERED** that in light of the Court's rulings, DNP's Motion For Leave To File Sealed Exhibits In Support of Its Response In Opposition To ATI's Motion For Reconsideration filed July 1, 2009 (Clerk's Document No. 16) is **DENIED.**

In all other respects, ATI's Motion To Reopen The Case (Clerk's Document No. 13) is **DENIED.**